UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
JEHAN SEMPER,                      )
                                   )   Case No. C04-2240L
                      Plaintiff,   )
       v.                          )
                                   )   ORDER GRANTING IN PART
JBC LEGAL GROUP, *et al.*,         )   CROSS-MOTIONS FOR
                                   )   DISPOSITIVE RELIEF
                      Defendants.  )
_____)

        This matter comes before the Court on "Plaintiff's Motion for Summary Judgment Resolving All Claims" (Dkt. # 33) and "JBC's Motion to Dismiss and For Summary Judgment Resolving All Claims" (Dkt. # 29). Plaintiff has asserted that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and various Washington statutes, and that defendants invaded her privacy by placing her in a false light. Plaintiff demands an award of maximum statutory damages, a determination of actual and punitive damages, an award of attorney's fees and costs, and such other proceedings as are just and proper.

        Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF

preclude the entry of judgment as a matter of law.[1] The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

    Taking the evidence presented in the light most favorable to the non-moving party, the Court finds as follows:

  1. Plaintiff misapprehends the effect of the rule that pro se litigants are held to a less stringent pleadings standard than litigants who are represented by counsel.  Although the rule requires that the allegations of a pro se complaint be liberally construed when determining whether a viable claim has been asserted and that strict compliance with procedural/technical rules will not be expected of pro se litigants, it does not alter the summary judgment standard or

---

[1] Although defendants request that certain claims be dismissed on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6), the parties have submitted evidence outside the record that the Court has not excluded. Because all parties have had an opportunity to present evidence related to the matters raised in the motions, they shall be considered under Fed. R. Civ. P. 56.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF  -2-

otherwise give pro se non-prisoner litigants multiple opportunities to present their evidence. "[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."  Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986).

      2. Defendant JBC Legal Group PC violated § 1692e(2) of the FDCPA and RCW 19.16.250(14) and (18), all of which preclude a debt collector from demanding amounts, fees, or costs that are not authorized by the debt instrument or governing law.  In its letter dated September 3, 2004, JBC demanded payment of statutory fees of $234.54 and a return fee of $25.00, in addition to an amount close to, but not exactly, the face value of the dishonored check.[2]  Defendants assert that the demanded fees are authorized by RCW 62A.2-709(1) or RCW 62A.3-515.  The Court disagrees.  JBC is clearly not a "seller" under RCW 62A.2-709(1) and has not incurred the types of damages, such as the costs of stopping deliveries or of caring for goods after the buyer's breach, identified as "incidental damages" under RCW 62A.2-710.  Even if the Court assumes that JBC could have lawfully demand payment of certain reasonable handling fees under RCW 62A.3-515(a), there is no evidence that JBC complied with the mandatory notice requirements of RCW 62A.3-520.  Thus, by demanding payment of amounts, costs and fees that were not consistent with the debt instrument or authorized by statute, JBC made false representations regarding the debt owed by the debtor in this case.

      3. In the second count listed in her motion for summary judgment (Motion, Dkt. # 33 at 3), plaintiff states that defendants' attempt "to collect a debt that is in fact not owing . . . was

---

[2] Defendants misstated the amount of the alleged debt by reporting the "Original Amount Owed" as $78 and/or $78.18 (depending on the communication) instead of the $79.18 shown on the dishonored check.  Defendants have not attempted to explain this discrepancy which would, of course, make it more difficult for the consumer to identify the source and confirm the accuracy of the collections notice.

To the extent plaintiff objects to the Court's consideration of the check itself, the objection is overruled.  Even if the check is hearsay, it can be admitted to explain why defendants placed a collection notice on her credit report in the first place and to show what a review of defendants' files would have revealed regarding the debt.  Mr. Boyajian's testimony regarding the check, which simply describes the check and how it came to be held by Outsource Recovery Management, has also been considered.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF     -3-

false, misleading and unfair" under § 1692e and/or § 1692f of the FDCPA. Defendants point out that the dishonored check supported the initial report of a claim to the consumer reporting agencies. Plaintiff does not address this argument in her reply. The Court finds that, except as specifically noted herein, the original report of a debt in collection was not a false, deceptive, misleading, unfair, or unconscionable means of collecting on the alleged debt.[3]

      4. Defendant JBC Legal Group, PC violated § 1692e(3) of the FDCPA, which precludes the "false representation or implication . . . that any communication is from an attorney." The September 3, 2004, letter was written on JBC Legal Group PC letterhead and identifies four attorneys, the bars of which they are members, and the three offices maintained by JBC Legal Group. The signature block of the September 3rd letter states:

> **JBC Legal Group, PC**
> Compliance Department

Although the letter was not signed by a lawyer, an unsophisticated consumer would infer that an attorney was involved given the nature of the communication, the use of a law firm's letterhead, and the lack of any indication that the communication was administrative or otherwise generated by a non-lawyer employee of the firm. Mr. Boyajian has acknowledged that the September 3rd letter was prepared by "employees in JBC's Compliance Department." The implication that the communication was from an attorney is false and violates the statute.

      To the extent plaintiff argues that the use of attorney letterhead, in and of itself, constitutes a threat to sue in violation of § 1692e(5) of the FDCPA, the Court disagrees. Plaintiff requested additional information regarding the nature of a disputed claim and defendants answered. There is no implicit or explicit threat that JBC would file suit in its effort

---

[3] As discussed further below (see ¶ 20), neither party has provided sufficient information for the Court to determine whether plaintiff or an authorized agent wrote the disputed check back in 1998. Having failed to show that the check was written by another Jehan Semper or that it was otherwise invalid at its inception, plaintiff cannot succeed on her most general claims under § 1692e and § 1692f of the FDCPA.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF    -4-

to collect on the dishonored check.

5. Defendant JBC Legal Group PC violated § 1692e(8) of the FDCPA, which precludes the communication "to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." When plaintiff realized that a collections item was showing up on her credit report, she informed both Equifax and JBC of the dispute and requested additional information from JBC. Based solely on its own determination that plaintiff had failed to establish the merits of her dispute, JBC did not inform Equifax that the claim was, in fact, disputed. The FDCPA sets forth specific procedures and methods that must be used by debt collectors when attempting to collect outstanding debts: the statute does not give debt collectors the authority to determine unilaterally whether a dispute has merit or whether to comply with the requirements of the FDCPA in a given case. JBC's "failure to communicate that a disputed debt is disputed" violated the statute.

JBC also violated § 1692e(8) when it notified Equifax that plaintiff made a payment on the alleged debt on March 20, 2003. There is no evidence that plaintiff ever made a payment on the alleged debt, the information mirrors that contained in JBC's activity report related to plaintiff's file, and defendants knew or should have known that either the payment report was false or continued efforts to collect $337.72 were unwarranted (had plaintiff in fact paid the $234.54 recorded on JBC's activity report, the alleged outstanding debt would have been reduced to $103.18).

Finally, JBC's initial communication to the credit reporting agency regarding the status of the account that was in collections contained false representations regarding the client for whom JBC was attempting to recover the debt. As of August 14, 2004, JBC provided information to Equifax identifying its client as "ORM Bradlees." Not only was there no such entity, but there is no evidence that Bradlees was ever a client of JBC. JBC's argument that it was simply trying to give the debtor as much information regarding the provenance of the debt

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF           -5-

as possible does not alter the fact that its representation regarding its client was false and violated 15 U.S.C. § 1692e(8).

6. Defendant JBC Legal Group PC violated RCW 19.16.110 when it acted as a collection agency within the State of Washington without first obtaining a license. Pursuant to RCW 19.16.100(2)(a), a "collection agency" means "any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." In this case, JBC has attempted to collect a claim asserted to be owed to an entity called Outsource Recovery Management. Nonetheless, JBC argues that it is not a "collection agency" because RCW 19.16.100(3)(c) excludes from that term "[a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as . . . lawyers . . . ." When read as a whole and in light of the interpreting case law, Washington's Collection Agency Act applies to entities such as JBC which seek to collect debts that are unrelated to JBC's (or its affiliated company's) non-debt collector business. If, for example, JBC were seeking to recover fees owed to it by a client for legal services rendered, such activities would not make JBC a "collection agency." See Berry v. Fleury, 111 Wn. App. 1048, 2002 WL 1011541 (Wn. App. May 20, 2002). The same result would probably arise if JBC were collecting debts owed to an affiliated company as long as those debts arose from a business other than the collection of debts. See RCW 19.16.100(3)(f); Trust Fund Servs. v. Aro Glass Co., 89 Wn.2d 758, 761-62 (1978). The debt JBC sought to collect from plaintiff is not "directly related to the operation of a business other than that of a collection agency" -- its affiliate company purchased the alleged debt from a third-party merchant for the sole purpose of collecting on the instrument. Despite the fact that JBC is a law firm, its actions in this case are those of a collection agency subject to regulation under the Collection Agency Act.

7. Plaintiff has not identified any provision of state or federal law that was violated by

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF             -6-

defendants' alleged coding of her account number.[4]  To the extent defendants used this coding system in its attempt to collect fees and amounts in excess of those permitted by law, the legality of such activity has been considered elsewhere (see ¶ 2 of this Order).

8. Although JBC and Outsource Recovery Management ("ORM") are closely related, they are separate legal entities.  Plaintiff has provided no evidence in support of her vague argument that the corporate forms should be disregarded.  JBC's identification of ORM as its client and the holder of the debt instrument at issue is neither false nor misleading.[5]

9. Defendants' September 3, 2004, letter satisfied the notice requirements of § 1692g(a) of the FDCPA.  The five day period identified in the statute begins to run with the initial communication from the debt collector to the consumer.  In this case, the initial communication contained the necessary information regarding the amount of the debt, name of the creditor, etc.  No additional notices were required.

10. Defendant JBC violated § 1692g(b) of the FDCPA when it failed to "cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ."  JBC argues that its provision of all the "information about the debt that it had" satisfies the verification requirement.  See Affidavit of Jack Boyajian, Dkt. # 31 at ¶ 10.  Defendants' argument fails on both the facts and the law.  In the first place, JBC did not provide plaintiff with all the information it had regarding the alleged debt: for reasons unexplained, it chose to withhold the only documentation of the debt, the check itself, from plaintiff until after this suit was filed.  Secondly, defendants understate the burden placed on debt collectors once a consumer challenges the information on

---

[4] Defendants' request to strike those allegations that are based on information and belief, rather than admissible evidence, is GRANTED.  The Court has not considered the unsupported allegations contained in paragraphs 15 and 16 of plaintiff's motion (Dkt. # 33) or paragraph 2 of plaintiff's opposition (Dkt. # 48).

[5] Mr. Boyajian has personal knowledge regarding (a) the relationship between JBC and ORM and (b) the process through which ORM came into possession of the disputed check.  His statements regarding these issues have been considered.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF             -7-

her credit report. At that point, § 1692g(b) imposes an obligation on the debt collector to cease all debt collection activity while it verifies with the original creditor (or through other reliable means) that the amount being demanded is still due and owing. This requirement is designed to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382 at 4 (1977). Simply repeating the second- or third-hand information in the debt collector's file accomplishes neither goal and is insufficient under the statute. See Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1203 (9th Cir. 1999) (debt collector properly verified debt by contacting the original creditor, verifying the nature and balance of the outstanding debt, reviewing the efforts the original creditor made to obtain payment, and establishing that the balance remained unpaid); Sambor v. Omnia Credit Servs., Inc., 183 F. Supp.2d 1234, 1233 (D. Hawaii 2002) (stating by way of example that a debt collector seeking to collect amounts owed to a credit card company would have to cease attempts to collect the debt if a fire destroyed the credit card company's records, thereby precluding verification of the debt); Spears v. Brennan, 745 N.E.2d 862, 878-79 (Ind. App. 2001) (a copy of the original debt instrument does not verify that there is an existing unpaid balance and does not satisfy the verification requirement of § 1692g(b)).[6] In the case at hand, defendants made no effort to verify that the debt represented by the dishonored check was still owing and therefore failed to satisfy the verification requirement of the FDCPA.[7] Until the

---

[6] Even the case on which defendants rely, Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999), shows that verification of the debt involves confirming with the original creditor that the amount being demanded is what is still owed.

[7] The Court has been unable to locate two cases identified by plaintiff as "Coito v. Unifund Corporation, (9th Cir 2004) CV01-00379, Decided January 4, 2004" and "Boatley v. Diem Corporation, (9th Cir 2004) CV03-0762, Decided March 24, 2004." These cases are not listed on the Ninth Circuit's website and the case numbers are not in the form used by that court. The U.S. Party/Case Index supplied by plaintiff in support of the Boatley cite indicates that the case was decided by the District Court of Arizona (see the initials "azdc" under the heading "Court"). Unfortunately, the case is not reported in the Federal Supplement, is not published on Westlaw, and is unavailable to this Court. Defendants' request

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF           -8-

debt was verified, all further attempts to collect on the debt, including defendants' September 3rd letter and any subsequent reports to the credit reporting agencies, violated § 1692g(b).

11. Section 1692j(a) of the FDCPA states, "[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." The Court has already determined that JBC and ORM are separate legal entities. Because JBC was actually involved in the collection efforts, its generation of the September 3, 2004, letter does not violate § 1692j(a).

12. Defendants seek a summary determination that plaintiff's recovery of statutory damages under the FDCPA is limited to no more than $1000.[8] The language of § 1692k and existing case law show that the FDCPA limits damages, above and beyond all actual damages, to $1,000 for each proceeding rather than $1,000 for each violation of the statute. Pursuant to 15 U.S.C. § 1692k(a)(2)(A), statutory damages "in the case *of any action* by an individual" shall not exceed $1,000 (emphasis added). "This statutory language clearly implies that statutory damages are limited for an individual plaintiff to $1,000 for each action or proceeding. There is no language in § 1692k or any where else in the FDCPA which on its face authorizes statutory damages of $1,000 for each violation of the statute." Barber v. Nat'l Revenue Corp., 932 F. Supp. 1153, 1155 (W.D. Wis. 1996). See also Wright v. Fin. Serv. of Norwalk, 22 F.3d 647, 650-51 (6th Cir. 1994). Because Congress drafted § 1692k(a)(2)(A) using the $1,000 for each "action" language, plaintiff's statutory damages under the FDCPA will be limited to $1,000.[9]

---

to strike plaintiff's references to Boatley is, therefore, GRANTED.

[8] Defendants have not sought an interpretation of the FCRA damage provisions.

[9] This ruling does not impact plaintiff's right to seek actual damages under the FDCPA above and beyond whatever statutory damages are awarded.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF           -9-

13.  Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the furnisher of information to a consumer reporting agency shall follow certain procedures established to ensure that accurate information is being provided.  Pursuant to § 1681i(a)(2) and interpreting case law, the notice that triggers the debt collector's investigative duties under § 1681s-2(b) must come from the credit reporting agency, not the consumer. Young v. Equifax Credit Information Services, Inc., 294 F.3d 631, 639-40 (5th Cir. 2002); Peasley v. Verizon Wireless (VAW) LLC, 364 F. Supp.2d 1198, 1200 (S.D. Cal. 2005); Stafford v. Cross Country Bank, 262 F. Supp.2d 776, 784 (W.D. Ky. 2003); Whisenant v. First Nat'l Bank & Trust Co., 258 F. Supp.2d 1312, 1316 (N.D. Okla. 2003).  Defendants have produced JBC's computerized account summary sheet which contains no indication that JBC received or replied to any inquiries from Equifax on the alleged debt.  Affidavit of Jack Boyajian, Dkt. # 31 at ¶13.[10]  Although plaintiff disputes the accuracy of JBC's computerized records (as well as the veracity of Mr. Boyajian's statements) and has provided evidence that Equifax did, in fact, contact JBC regarding the alleged debt,[11] there is a genuine issue of fact which cannot be resolved in the context of this motion for summary judgment.

Defendants argue that even if the Court assumes that Equifax contacted JBC

---

[10] Mr. Boyajian's testimony that JBC did not, in fact, receive notice of plaintiff's dispute from Equifax is not based on personal knowledge and is therefore inadmissible.  Plaintiff's motion to strike this testimony (see Opposition to Defendants' Motion to Dismiss, Dkt. # 48 at 4) is granted.  The Court has, however, considered Mr. Boyajian's statements regarding JBC's normal business practices as it relates to the issuance of an initial notice of debt and the maintenance of JBC's computerized account summaries.

[11] Defendants' objection to the Equifax credit reports (see Reply to Motion to Dismiss, Dkt. # 52 at 8) is overruled: to the extent the reports are being offered for the truth of the matter asserted, they may be admissible under Fed. R. Ev. 803(6) as records of regularly conducted activity.  Defendants' objection to plaintiff's testimony regarding the meaning of various entries on her credit report (see Opposition at 15) is also overruled: plaintiff may testify based on her personal experience with her own credit reports.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF            -10-

regarding plaintiff's dispute, her § 1681s-2(b) claim fails because the original collection notice was not false and because JBC took the steps identified in the statute. As discussed elsewhere, the credit information provided to Equifax in the first instance was false insofar as it did not accurately reflect the face value of the dishonored check, the fees and costs that could be recovered, or the name of the original creditor. Had JBC simply compared the information it had provided to the credit reporting agencies with the check in its possession, these discrepancies would have come to light and would have required corrective action under § 1681s-2(b)(1)(E).[12] Notwithstanding the "scant" information provided by the consumer regarding the nature of her dispute (see Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005)), defendants' investigation was not reasonable given that it did not uncover even the most obvious inaccuracies in its reporting.

14. There is no private right of action for violations of § 1681s-2(a) of the FCRA. Pursuant to 15 U.S.C. § 1681s-2(d), subsection (a) "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified" therein. Plaintiff's fourteenth and fifteenth counts fail as a matter of law.

15. Plaintiff has not identified any provision of state or federal law that was violated by defendants' alleged failure to maintain written policies and procedures regarding the handling of

---

[12] The FCRA does not provide any indication as to the level of investigation required under § 1681s-2(b)(1). The investigation requirement for furnishers of information is, however, "analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report" and, therefore, furnishers of credit are required to conduct a reasonable investigation. Bruce v. First U.S.A. Bank, Nat'l Ass'n, 103 F. Supp.2d 1135, 1143 (E.D. Mo. 2000). In Bruce, the Court employed two factors to determine whether a furnisher of information engaged in adequate investigation of a disputed debt: "(1) whether the consumer has alerted the agency that the initial source of the information may be unreliable or if the agency knows or should know that the source is unreliable, and (2) the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." Bruce, 103 F. Supp 2d at 1143. Whether such an investigation has been conducted is generally a question of fact for the jury but can be determined as a matter of law if the reasonableness of defendants' investigation is beyond question. See Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005).

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF            -11-

consumer and credit reporting agency inquiries. The adequacy of a debt collector's policies generally becomes an issue when the debt collector asserts the good faith defense available under § 1692k(c). In this case, defendants argue that their claim handling procedures and reporting activities satisfy the requirements of the applicable state and federal laws: they are not asserting that their conduct was unintentional or the result of a bona fide error. Even if the Court assumes that defendants failed to maintain adequate procedures for purposes of § 1692(k), such a failure is not a basis upon which additional liability can be imposed.

16. Plaintiff has asserted a claim for punitive damages, apparently under § 1681n of FCRA. As noted above, however, plaintiff does not have standing to assert claims under § 1681s-2(a) and there are genuine issues of fact which preclude a finding of liability under § 1681s-2(b). Plaintiff's claim for an award of punitive damages is not yet ripe.

17. Under Washington law, the false light branch of an invasion of privacy claim arises "when someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." <u>Eastwood v. Cascade Broadcasting Co.</u>, 106 Wn.2d 466, 470-71 (1986). Plaintiff asserts that, following receipt of her dispute letter (if not earlier), defendants knew or recklessly disregarded discovering the falsity of their continuing publication of a bad debt on her credit report. Defendants argue that the negative claim on plaintiff's credit report was not "publicized" because there is no evidence that any of plaintiff's existing or potential creditors reviewed the report during the relevant time frame. Defendants are incorrect on the facts. Plaintiff's credit report indicates that six existing or potential creditors reviewed her report between November 2004 and April 2005. Fourth Affidavit of Jehan Semper, Dkt. # 65 at Ex. J. In addition, plaintiff has provided evidence that one of her existing creditors closed her credit card account in July 2005 in part because of a "DEROGATORY PUBLIC RECORD OR COLLECTION FUND" identified through "a review of information provided by a consumer reporting agency."

Fourth Affidavit of Jehan Semper, Dkt. # 65 at Ex. H.[13]

Defendants also argue that plaintiff's invasion of privacy/false light claim should be dismissed because, given the limited nature of the disclosure, a report of bad credit "does not compare to the highly offensive communications cited in case law as worthy of compensation under this cause of action." Reply to Motion to Dismiss, Dkt. # 52 at 11. See Fisher v. Dep't of Health, 125 Wn. App. 869, 879 (2005). Defendants' publication was accessible to anyone authorized to obtain a credit report on plaintiff (including credit card companies, potential landlords, and other creditors) and it publicly accused plaintiff of the very conduct that would make her appear undesirable to the intended audience. At the very least, there is an issue of fact regarding whether such disclosure would be "highly offensive" to a reasonable person.

18. Plaintiff has sued both JBC Legal Group PC and its president, Jack Boyajian for the violations of federal and state law discussed above. Plaintiff argues that Mr. Boyajian should be held liable under the FDCPA, the FCRA, and state law because he directs the activities of JBC. Although a lawyer and his law firm may be "debt collectors" under the relevant statutes (see Heintz v. Jenkins, 514 U.S. 291 (1995)), Mr. Boyajian did not personally participate in the generation of the September 3, 2004, letter and plaintiff has not provided any evidence other than his position within JBC to support her claim that he is responsible for the reporting and debt collection activities of which she complains. The Court finds that Mr. Boyajian is not a "debt collector" as defined in § 1692a(6) of the FDCPA because he did not personally use or direct the use of the instrumentalities of interstate commerce or the mails to collect a debt from

---

[13] Defendants' objection to the late disclosure of the Household Bank letter (see Defendants' Reply to Motion to Dismiss, Dkt. # 52 at 9) is overruled. The letter was not written until June 15, 2005, ten days after discovery closed and two weeks before defendants filed their dispositive motion. Given the fact that the letter only recently came into existence and plaintiff's status as a pro se litigant, her disclosure of the letter on July 18, 2005, as an exhibit to her opposition memorandum was timely.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF          -13-

plaintiff.[14] Nor is Mr. Boyajian a "person" who could be liable under § 1681s-2(b) of FCRA. There is no evidence that Mr. Boyajian, as opposed to JBC, reported that plaintiff's account was in collections: any duty to investigate and correct the original report would belong to JBC. Pursuant to RCW 19.16.100(3)(a), employees of a "collection agency" are not, in and of themselves, "collection agencies" even when they are directly involved in the attempts to obtain payment on a debt. There is no indication in the statute that an officer of a corporation who was not involved in the debt collection activities would be liable for corporate violations of the Collection Agencies Act.

19. There are genuine issues of fact regarding the extent of plaintiff's emotional and pecuniary damages. Plaintiff's testimony, combined with the documents showing the availability of lucrative employment in New York and the loss of credit, raise a genuine issue of fact regarding the amount of actual damages attributable to JBC's conduct. The extent to which plaintiff will be permitted to testify regarding the Equifax' "alert" service and defendant will be permitted to submit evidence regarding other suits filed by plaintiff will be determined at trial.

20. In her opposition to defendants' motion to dismiss, plaintiff requests a declaration that no debt related to the disputed check is due or owing. Because neither party has contacted Banco Popular and/or Bradlees, it is impossible to determine whether plaintiff or an authorized agent wrote check number 332 to Bradlees or whether the debt reflected on that check has been satisfied. Although both parties have acknowledged that the check can no longer be enforced, its validity at the time it was written cannot be determined on the record presented.

21. To the extent the Court has not specifically ruled on an evidentiary objection raised by the parties, the evidence or issue to which it relates was deemed irrelevant to the above legal

---

[14] Plaintiff's argument that Mr. Boyijian admitted that he is a debt collector under the FDCPA is unpersuasive. The admission to which defendants responded in the affirmative uses the ambiguous phrase "Defendant(s) is" and does not clearly admit the proposition that Mr. Boyijian himself is a debt collector.

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF         -14-

analysis (such as whether plaintiff attempted to locate a branch office of Banco Popular). Although such evidence has not been stricken, it did not inform the Court's judgment.

22.  Plaintiff's unauthorized sur-reply has not been considered.

For all of the foregoing reasons, plaintiff's and defendants' motions for summary judgment are GRANTED in part. Plaintiff is entitled to judgment as a matter of law on her claims that defendant JBC Legal Group PC violated §§ 1692e(2), 1692e(3), 1692e(8), and 1692g(b) of the FDCPA, RCW 19.16.110, and RCW 19.16.250(14) and (18). There are genuine issues of material fact which preclude summary judgment for either party on plaintiff's invasion of privacy/false light claim, her 15 U.S.C. § 1681s-2(b) claim, and on her demand for actual and punitive damages. The undisputed facts of this case show, however, that defendant Jack Boyijian cannot be held liable on any of plaintiff's claims and that JBC has not violated §§ 1692e(5), 1692g(a), or 1692j(a) of the FDCPA or § 1681s-2(a) of the FCRA: defendants are entitled to judgment on those claims.

The Clerk of Court is directed to send a copy of this Order to defendant at the following addresses:

JBC Law Group PC                           knations@boyajianlaw.com
c/o Karen Nations
10020 Hardy Drive
Overland Park, KS 66212


DATED this 6th day of September, 2005.


*MW S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART CROSS-
MOTIONS FOR DISPOSITIVE RELIEF             -15-